# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Timothy O'Dell,**
**Petitioner Below, Petitioner**

**vs)   No. 15-0442** (Berkeley County 14-C-225)

**Marvin Plumley, Warden,**
**Huttonsville Correctional Center,**
**Respondent Below, Respondent**

**FILED**

**June 3, 2016**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Timothy O'Dell, pro se, appeals the April 15, 2015, order of the Circuit Court of Berkeley County denying his petition for writ of habeas corpus. Respondent Marvin Plumley, Warden, Huttonsville Correctional Center, by counsel Christopher C. Quasebarth, filed a response, and petitioner filed a reply.

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In 2006, petitioner was indicted for the felony offenses of first-degree murder and conspiracy to commit murder with regard to the death of Debbie Bivens. The State's theory of the case was that Benny Brookman, a former paramour of Ms. Bivens, hired petitioner to kill her. Petitioner's defense was that Mr. Brookman hired petitioner to drive an unknown person to Ms. Bivens' house, but that petitioner did not know that the unknown person had been engaged to kill Ms. Bivens. Shortly after the murder, it appears that Mr. Brookman may have committed suicide leaving a note.

At petitioner's trial, Mr. Brookman's suicide note, which identified petitioner as the shooter, was admitted into evidence as a dying declaration pursuant to Rule 804(b)(2) of the West Virginia Rules of Evidence. Mr. Brookman's suicide note was, as follows:

> yea I was going to pay Timmy Odell to kill Debbie for 50.00 Gave him $8,000 still owed him $42,000 he called me wed August 24, 2005 said Job was Done I was not Going to let anybody take $75,000 from me and that is what she Did. Give all my

1

stuff to andy klesh Timmy Odell also vandalized Her cars 2 years ago for $2000 Give all my money + belongings to *andy klesh*. He is the best friend I ever Had. Any if you would burn me + put ashes in Bay. I know this is all crazy. I have always tryed to be a fair person But when you work hard and Save your money for you Goals in life, and the meet someone you thought you trust to take your money $75000. I would have never Done this that Just Goes to show you what Greed does Sure I could have said oh well that is the way it Goes, but no I would never Done anybody that way. I worked hard for the money she took and could have build a bigger house. I have never been with a more Evil person in life. I sit here now and have bu for 3½ year to let it go. But it got the worst of me. Don't anybody fight over my stuff Just Give it to andy. Andy you take it spend it have fun. If I find out that you Did not do that I will whip you ass, andy you have been one best friend. I did not Really want to leave this way But I no Down inside I could not Survive behind bars. It is very har to Do this but I not it is best. I have never been in Such a quiet place like this. I was going to take boat Ride but no time, I Rush to find this spot because I Did not no if the cops were going to come to the house. Once I got her I relaxd to say good-bye to everyone. Even thought I left at 47, I still enjoyed life till this point, and I really have Done a lot of thing that I may never Done. I really had it all great family health, friends, how could I let it go. It is no fun socielizesyo threw bars. I Guess after this ordeal, what I have Done I probally will not Go to heven if one oh well I always like Raiseig alittill Bite of Hell. I am Getting [expletive]-up thought maybe would change mind. But I must move one. I can't Rememebor the last time I Enjoyed nature like thiss Just REmembor it is nothing that you all did. I was going to take Debbie out myself but, I figured It would be a taks so I new tim would take care of it, But he [expletive] up to. thanks *tim*. Believe me tim odell is just as much of falt as I am. His and my game plan Did not work so Don't feel sorry for the Dom-ass, and I don't wont you to feel sorry for me. I was a discussion I made that to me was good. Because there is a lot of thing you can passed me. But don't mess with my felling + money I worked hard for. I Love all of you + am sorry it all turned out this way But Just always Remembr the Good time we Spent together Love all of ya *Bye Bye Just of Andy you Bean Jop Bitch*. I will admit I [expletive]-up. I did make-up the game Plan. Tim is the on who [expletive] iit up, Look at it this way I will miss you all. My favortea Song was. *Elvis Suspesus mind* may wiser I love you and I wish thing could have move on.

(Errors and emphasis in original.)

A pretrial statement made by petitioner to the police was also admitted into evidence. The circuit court gave the jury the standard instruction regarding the State's obligation to prove by a preponderance of the evidence that petitioner's statement was voluntarily made. The jury subsequently found petitioner guilty of both counts of the indictment. Consistent with the jury's verdict, the circuit court sentenced petitioner to a life term of incarceration with the possibility of parole for the murder conviction and five years of incarceration for the conspiracy conviction, with the sentences running consecutively. Petitioner was resentenced for purposes of appeal in 2008, but his direct appeal was refused in 2009.

Petitioner had his omnibus habeas corpus proceeding in *O'Dell v. Ballard*, No. 13-0220, 2013 WL 6152368 (W.Va. Nov. 22, 2013) (memorandum decision).[1] In that case, petitioner was appointed counsel who filed an amended habeas petition. In the amended petition, counsel incorporated by reference a second amended petition that petitioner prepared pro se. Finally, counsel also filed exhibits and a *Losh* checklist.[2] In its January 30, 2013, order denying habeas relief, the circuit court addressed both amended petitions and specifically found that "[p]etitioner's claims fail[ed] to show any constitutional error or any need for an evidentiary hearing."[3]

Following this Court's affirmation of the denial of relief in *O'Dell*, petitioner filed a subsequent habeas petition and was again appointed counsel. In the amended petition, petitioner asserted that counsel in the habeas proceeding in *O'Dell* was ineffective for a failure to argue (1) that the "presumed suicide note" found near Mr. Brookman's body did not constitute a dying declaration because petitioner's co-conspirator's death was not a suicide; and (2) that the answers given by the circuit court to the jury's questions during its deliberations diluted its clear instruction that the State had to prove that petitioner's statement was voluntarily made without threat, coercion, promise, or reward.[4] Following a response to the amended petition by respondent, the circuit court denied habeas relief in an order entered April 15, 2015.

As petitioner alleges that habeas counsel was ineffective for failing to argue certain issues in *O'Dell*, we find that the circuit court's January 30, 2013, order denying that petition contains findings relevant to this appeal. In that order, the circuit court first determined that Maryland

---

[1]We take judicial notice of the record in *O'Dell*.

[2]*See Losh v. McKenzie*, 166 W.Va. 762, 768-70, 277 S.E.2d 606, 611-12 (1981).

[3]In *O'Dell*, we affirmed this finding of the circuit court and determined that an evidentiary hearing was not required for a proper adjudication of petitioner's claim of ineffective assistance of trial counsel. *See* 2013 WL 6152368, at *5-6.

[4]Petitioner also asserted that counsel in *O'Dell* was ineffective by not preparing an adequate appendix to support the issues which were raised in that appeal. Those issues were, as follows: (1) that Mr. Brookman's suicide note was admitted at trial in violation of the Confrontation Clause of the United States and West Virginia Constitutions; (2) that the circuit court failed to conduct a suppression hearing prior to admitting his pretrial statement; (3) that the circuit court improperly denied his motion to conduct discovery in *O'Dell* on his claim that his statement was coerced; and (4) that trial counsel was ineffective. In the instant appeal, petitioner does not abandon his assertion that counsel in *O'Dell* prepared an inadequate appendix, but concedes that those issues were "obviously weak claims." Based on our review of the record in the present appeal, including the transcript of petitioner's pretrial statement, we accept petitioner's concession and conclude that even if the appendix in *O'Dell* did not have the gaps we noted therein, we still would not have found any merit to the issues raised in that appeal.

3

Detective Patrick Thompson's brief testimony about a medical examiner's finding that petitioner's co-conspirator's death[5] was a suicide was harmless—even if error under *Crawford v. Washington*, 541 U.S. 36 (2004)[6]—because a description of the scene of Mr. Brookman's death provided by Detective Thompson "overwhelmingly pointed to a suicide," which was the police determination.[7] *See O'Dell*, 2013 WL 6152368, at *1. The circuit court then determined that Mr. Brookman's suicide note was admissible because it was non-testimonial in nature under *Crawford* as well as a dying declaration pursuant to Rule 804(b)(2) of the Rules of Evidence. The circuit court explained that "a suicide note can conceivably be written for a variety of purposes, but mostly to make a final statement; to let others know what was going on and why." In *O'Dell*, we affirmed these rulings of the circuit court. 2013 WL 6152368, at *1-3 and n.4.

Second, the circuit court determined that petitioner's pretrial statement to the police was admissible for the jury's consideration and that the jury was properly instructed about statements made under coercion. The circuit court noted that, as pointed out by petitioner, during its deliberations, the jury asked the court questions concerning the statement, but explained that "[t]hese questions were reflective of deliberation on whether portions of the statement were the product of tough police questioning or coercion." The circuit court concluded that "nothing in the record reflect[s] that the jury actually found that any part of [petitioner's] statement was involuntary." On appeal in *O'Dell*, petitioner's habeas counsel raised the issue of whether the jury was properly instructed about statements made under coercion, noting that the jury asked "multiple questions" during its deliberations. We rejected petitioner's argument that the jury's questions "evidence[d] the jury's belief that petitioner was subjected to coercion" because it was given "[the] standard instruction regarding the State's obligation to prove by a preponderance of the evidence that petitioner's statement was voluntarily made, and because that instruction utilized the phrase, 'without threat, coercion, promise[,] or reward.'" 2013 WL 6152368, at *4 n.6.[8] Petitioner now appeals the circuit court's April 15, 2015, order denying his habeas petition in which he alleged that counsel in *O'Dell* was ineffective.

---

[5]Mr. Brookman's body was discovered in the State of Maryland.

[6]Consistent with the Supreme Court's decision in *Crawford v. Washington,* 541 U.S. 36 (2004), we subsequently held that "the Confrontation Clause contained within the Sixth Amendment to the *United States Constitution* and Section 14 of Article III of the *West Virginia Constitution* bars the admission of a testimonial statement by a witness who does not appear at trial, unless the witness is unavailable to testify and the accused had a prior opportunity to cross-examine the witness." Syl. Pt. 6, *State v. Mechling*, 219 W.Va. 366, 633 S.E.2d 311 (2006).

[7]The overwhelming weight of evidence indicating that Mr. Brookman's death was a suicide may explain the circuit court's additional finding that "[p]etitioner made no objection to this issue at trial."

[8]We made this ruling in connection with our determination that petitioner's second and third assignments of error in *O'Dell* lacked merit. *Id.* at *4-5.

4

We apply the following standard of review in habeas appeals:

> In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review.

Syl. Pt. 1, *Mathena v. Haines*, 219 W.Va. 417, 633 S.E.2d 771 (2006). Following an omnibus habeas corpus proceeding, the doctrine of res judicata bars subsequent petitions with certain exceptions, chiefly, ineffective assistance of counsel in the omnibus proceeding. Syl. Pt. 4, *Losh v. McKenzie*, 166 W.Va. 762, 277 S.E.2d 606 (1981). In West Virginia, claims of ineffective assistance of counsel are governed by the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668 (1984): (1) counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. Syl. Pt. 5, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995).

On appeal, petitioner makes the same two claims asserted in his amended habeas petition: that habeas counsel in *O'Dell* was ineffective by not arguing (1) that the "presumed suicide note" found near Mr. Brookman's body did not constitute a dying declaration because petitioner's co-conspirator's death was not a suicide; and (2) that the answers given by the circuit court to the jury's questions during its deliberations diluted its clear instruction that the State had to prove that petitioner's statement was voluntarily made without threat, coercion, promise, or reward. We address these contentions in turn.

First, we find that petitioner disagreed with both trial counsel[9] and habeas counsel in *O'Dell* regarding the merit of his argument that Mr. Brookman's death was not a suicide. Petitioner asserts that such an argument constituted a way of showing that the "presumed suicide note" found near his co-conspirator's body was not admissible as a dying declaration pursuant to Rule 804(b)(2). Petitioner points out that there was no finding by a medical examiner admitted into evidence—or, not one properly admitted—classifying the death as suicide. Respondent counters that no such finding needed to be admitted because Detective Thompson's description of the scene at which Mr. Brookman's body was found provided a sufficient evidentiary basis on which to find that Mr. Brookman committed suicide. We agree with respondent. The circuit court found that Detective Thompson's description of the scene "overwhelmingly pointed to a suicide." We note that while this finding could have been challenged on appeal in *O'Dell*, we would have reviewed it only for clear error. *See* Syl. Pt. 1, *Mathena*, 219 W.Va. at 418, 633 S.E.2d at 772. Thus, we determine that habeas counsel made a strategic decision not to contest the fact that petitioner's co-conspirator's death was a suicide on appeal.[10] Moreover, we find counsel's strategic decision

---

[9]*See* fn. 7, supra.

[10]*See* Syl. Pt. 6, *Miller*, in part, 194 W.Va. at 6-7, 459 S.E.2d at 117-18 ("In reviewing
(Continued . . .)

5

to be a sound one because Mr. Brookman's note also contained evidence that his death was a suicide. In *O'Dell*, we found that "the bulk of [petitioner's co-conspirator's] note is characterized by remorse and explanation *for his choice of suicide*, as well as his affection and intended testamentary bequest for a friend." 2013 WL 6152368, at *3. (Emphasis added.) Therefore, we conclude that counsel's decision in *O'Dell* not to assert that Mr. Brookman's death was something other than a suicide did not constitute ineffective assistance.

Second, in alleging that counsel in *O'Dell* did not argue that the circuit court incorrectly answered the jury's questions during its deliberations, petitioner points to our mention of only two of those questions. 2013 WL 6152368, at *4 n.6. However, upon our review of counsel's brief in *O'Dell*, we find that counsel refers to "multiple questions" asked by the jury during its deliberations, quotes two of those questions,[11] and cites to the trial transcript. Furthermore, the appendix in *O'Dell* contains all of the pages of the trial transcript relevant to this issue. Thus, we find that counsel adequately informed us that the circuit court gave answers to multiple jury questions. Therefore, we find that counsel's performance in raising this issue was not deficient and petitioner's dissatisfaction with our rejection of it was not a legitimate ground for alleging ineffective assistance. Accordingly, we conclude that the circuit court did not abuse its discretion in denying petitioner's habeas petition.

For the foregoing reasons, we affirm the circuit court's April 15, 2015, order denying petitioner's petition for writ of habeas corpus.

Affirmed.

**ISSUED**: June 3, 2016

---

counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance *while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions.*"). (Emphasis added.)

[11]The two jury questions quoted were, as follows: ". . . [W]hen [petitioner] signed an agreement to the free and voluntary statement prior to the actual interrogation, at which point does the coercion invalidate the statement?"; and "At the point at which the perceived coercion occurs does it invalidate the remaining series of statements as related to the initial coerced statement?"

**CONCURRED IN BY**:

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II